UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
IRWING VELANDIA, on behalf of himself and all          :
others similarly situated,                              :
                                                        :     16-CV-1799 (AJN)
                                    Plaintiff,          :
                                                        :
            -against-                                   :     PROPOSED FINDINGS
                                                        :     OF FACT AND
SERENDIPITY 3, INC. d/b/a SERENDIPITY 3, and            :     CONCLUSIONS OF LAW
STEPHEN BRUCE,                                          :
                                                        :
                                    Defendants.         :
------------------------------------------------------------------------X

## DEFENDANTS' PROPOSED FINDINGS OF FACT

Defendants respectfully refer the Court to the Stipulations of Fact in the parties' Joint Pretrial Report, Dkt. # 82. In addition to the facts stated therein, Defendants set forth these additional proposed findings of fact:

Debra Christie, Serendipity 3's General Manager, was solely responsible for all aspects of the restaurant's operations, including interviewing and hiring all staff, establishing the wages of the staff, training the employees, scheduling employee shifts, disciplining employees, terminating employees, and maintaining the restaurant's operations both in the kitchen and the front of house. As such, Stephen Bruce did not exercise any operational authority over Serendipity 3 servers and bussers. *See* Deposition Transcript of Debra Christie ("Christie Dep."), at 9:5-8, 14:11-14, 15:15-17, 161:15-19; Deposition Transcript of Stephen Bruce ("Bruce Dep."), at 11:4-12:14, 37:24-38:11, 45:12-15, 45:20-46:15, 50:15-17, 62:6-8, 62:12-15, 67:22-24, 81:24-82:6; Deposition Transcript of Irwing Velandia ("Velandia Dep."), at 85:17-86:19, 93:20-24, 204:17-20; Deposition Transcript of Justin Hunt ("Hunt Dep."), at 26:14-27:14, 27:23-28:8, 49:2-50:21, 53:10-54:19, 137:8-138:4, 138:21-139:8, 139:17-25; Deposition Transcript of Adam Pestreich ("Pestreich Dep."), at 46:10-47:13, 80:7-22; 131:9-16, 138:22-139:15,

Stephen Bruce is the sole shareholder of Serendipity 3, Inc., the corporation that owns the restaurant, Serendipity 3, whose job functions at Serendipity 3 are limited to answering the phone, taking reservations, greeting and speaking to guests, posing for photographs, and autographing books about the restaurant. *See* Bruce Dep., at 8:17-9:5; Christie Dep., at 139:4-10, 145:4-8, 145:9-19; Pestreich Dep., at 141:20-142:22; Hunt Dep., at 53:10-54:19; Velandia Dep., at 85:22-86:19.

Serendipity 3 required servers to wear black pants, black shoes, and a black Serendipity 3 shirt. Serendipity 3 provided each server with two to three wash-and-wear Serendipity 3 t-shirts, which could be routinely washed and dried with other personal garments and worn without need for ironing, daily washing, commercial laundering, or other special treatment. *See* Pestreich Dep., at 69:13-71:17; Velandia Dep., at 68:12-18, 69:8-10; Hunt Dep., at 71:3-6, 71:24-72:6.

On December 31, 2015, the New York tipped minimum wage in New York City increased from $5.00 to $7.50.  In January 2016, Serendipity inadvertently and unintentionally continued to pay its tipped employees at the lower rate. Upon recognizing the error in the third week of January 2016, Serendipity issued retroactive payment to its employees within two (2) weeks to compensate them for the inadvertent and unintentional underpayment. *See, e.g.*, Pestreich Dep., at 135:17-136:3.

At all relevant times, Serendipity's restaurant is divided into six station assignments – East, West, and Far Out on the first floor, and South, North, and Midtown on the second floor. Servers/bussers were scheduled to rotate through the six station assignments over a six day period pursuant to posted work schedules and then received two or three days off. *See* Christie Dep., at 24:3-17.

Servers/bussers generally arrived at the restaurant at 10 a.m. and the restaurant opened at 11:30 a.m.  Because of past issues with no call/no show employees, Serendipity requested that servers/bussers arrive about 1.5 hours before opening to allow the restaurant time to find a replacement for servers/bussers who did not show up, avoiding opening the restaurant short-staffed. *See* Christie Dep., at 22:21-23:16.

Servers/bussers clocked in upon arrival at the restaurant and were paid for the entire time they were at the restaurant, even though most worked for only 20 to 40 minutes in the 1.5 hours before the restaurant opened.  Five of the six stations required approximately 30 minutes of side work during the day shift.  Side work included checking the salt and pepper shakers for cleanliness, refilling shakers when necessary, filling the refrigerators, checking and replenishing supply of tarts and teas, preparing whipped cream, setting up a counter with lettuce, iced coffee, and iced tea, setting up the garnish station, setting up a trash pail, and checking back-up stock. Servers/bussers were not individually responsible for completing all of these tasks on a daily basis; specific tasks were assigned to servers at each station. *See* Christie Dep., at 23:4-24:2; 24:18-25:8; Plaintiffs' Exh. "105".

At all relevant times, Serendipity's tip practice and policy required servers to allocate 20% of their tips to the bussers on duty that day, regardless of how many bussers were working. *See* Christie Dep., at 46:5-23; Velandia Dep., at 134:14-23.

At no time did Serendipity require or allow servers to pay off any kitchen staff including ice cream scoopers.  Not only is the practice unlawful but Serendipity considered it to be impermissible "bribery", *i.e.*, paying another worker for preferential treatment. Indeed, the employee handbook states, "Bribery to any staff member, in the form of cash, or any other payment, for the purpose of preferential treatment is strictly forbidden." After the lawsuit was filed, Debra Christie, Serendipity's General Manager for the past 30 years, became aware of the allegations that servers were allocating tip money to kitchen staff, including ice cream scoopers. Ms. Christie held a meeting to remind the servers of Serendipity's policies restricting tipping to bussers and prohibiting tips to kitchen staff. In response, multiple servers provided statements attesting that any tips that they chose to give to kitchen staff was done voluntarily and not at Serendipity's direction.  Indeed, plaintiff Hunt provided one of the written attestations, which he confirmed as part of his deposition testimony.  *See* Defendants' Exh. "G"; Christie Dep., at 47:9-16, 54:4-5, 55:7-11, 56:3-5, 59:21-60:2; Defendants' Exh. "H"; Hunt Dep., 113:7-19.

## DEFENDANTS' PROPOSED CONCLUSIONS OF LAW

Defendants respectfully refer the Court to the Stipulations of Law in the parties' Joint Pretrial Report, Dkt. # 82. In addition to the laws stated therein, Defendants set forth these additional proposed conclusions of law:

### Stephen Bruce Is An Improper Defendant

Mr. Bruce is not an employer under the FLSA or NYLL because he did not exercise economic or functional control over Serendipity 3 servers and bussers. The evidentiary record, including testimony from all deponents, shows that that Mr. Bruce's sole role in the restaurant was limited to answering the telephone during day, taking reservations, and signing books about the history of the restaurant. At no time did Mr. Bruce make any employment decisions, *i.e.*, interviewing, setting salaries, hiring, firing, disciplining, scheduling, reviewing timecards or payroll records, or setting employment policies, for the restaurant.

*See Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013) ("Evidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate 'employer' status… It is appropriate… to require some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation"); *Garcia v. Vill. Red Rest. Corp.*, 2017 WL 1906861, at *4 (S.D.N.Y. May 8, 2017) (finding individual was not employer where plaintiffs failed to show that individual exercised operational authority over restaurant or influenced employees' terms of employment); *Switzoor v. SCI Eng'g, P.C.*, 2013 WL 4838826, at *6 (S.D.N.Y. Sept. 11, 2013) ("A person may not be held individually liable for a company's FLSA violations simply because he was an executive of that company."); *Khurana v. JMP USA, Inc.*, 2017 WL 1251102, at *9 (E.D.N.Y. Apr. 5, 2017) ("The statutory standard for employer status under the NYLL is nearly identical to that of the FLSA.") (quoting *Hernandez v. Jrpac Inc.*, 2016 WL 3248493, at *22 (S.D.N.Y. June 9, 2016)); *Leon v. Zita Chen*, 2017 WL 1184149, at *6 (E.D.N.Y. Mar. 29, 2017) ("Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA.") (citations omitted).

### Serendipity 3 Properly Provided Uniforms

Serendipity 3 properly provided servers with a sufficient number of uniforms in light of the average number of days they worked per week. Indeed, Serendipity 3 provided servers with three (3) t-shirts that could easily be washed with their regular clothes throughout the week. By providing servers with a wash-and-wear uniform at no cost to them, Serendipity is not liable for any additional uniform pay.

*See Gregory v. Stewart's Shops Corp.*, 2016 WL 8290648, at *17 (N.D.N.Y. July 8, 2016), *R&R adopted*, 2016 WL 5409326 (N.D.N.Y. Sept. 28, 2016) (refusing to interpret Wage Order to mean that it requires an employer to provide a number of wash and wear uniforms *equal* to the number of days per week an employee regularly worked, finding "Given that the authors of the Hospitality Wage Order, if they so intended, could have drafted a bright-line standard such as that suggested by the plaintiffs, the court concludes that it must apply the more subjective

language of § 146-1.7(b)(4), as written."); *Gregory v. Stewart's Shops Corp.*, 2015 WL 893058, at *8 (N.D.N.Y. Mar. 2, 2015) ("The Wage Order also has a '[w]ash and wear exception to uniform maintenance pay,' that provides: 'An employer will not be required to pay the uniform maintenance pay, where required uniforms: (1) are made of "wash and wear" materials; (2) may be routinely washed and dried with other personal garments; (3) do not require ironing, dry cleaning, daily washing, commercial laundering, or other special treatment; and (4) are furnished to the employee in sufficient number, or the employee is reimbursed by the employer for the purchase of a sufficient number of uniforms, consistent with the average number of days per week worked by the employee.'") (quoting 12 NYCRR § 146–1.7(b)); *Allende v. PS Brother Gourmet, Inc.*, 2013 WL 11327098, at *4 (S.D.N.Y. Feb. 1, 2013) ("New York law excludes from the definition of 'uniform' 'clothing that may be worn as part of an employee's ordinary wardrobe,' or 'ordinary basic street clothing,' Although 'uniform' is not expressly defined under federal law, the U.S. Department of Labor has similarly suggested that 'ordinary basic street clothing' would not be considered a uniform.") (citations omitted); *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 476 (S.D.N.Y. 2015) (finding that black dress pants, black dress shoes, and black belt did not constitute a required uniform under NYLL or FLSA as it was not supplied by restaurant and there was no evidence that variations in these items, which all fall within the scope of "ordinary basic street clothing" were not permitted) (citing *Lu v. Jing Fong Rest., Inc.,* 503 F. Supp. 2d 706, 712 (S.D.N.Y.2007) (concluding that "black dress pants, black socks, and black leather shoes ... do not qualify as a 'uniform' ") (internal quotation marks and citation omitted); and U.S. Dep't of Labor, Wage & Hour Div., Op. Letter 1–2 (May 15, 2008), *available at* http://www.dol.gov/whd/opinion/FLSA/2008/2008_05_15_04_FLSA.pdf (explaining that "darkcolored," closed-toed shoes with a non-slip sole, which may be of any "quality, brand, style, model, or type" and purchased from the employee's vendor of choice, are not a "uniform" under federal law.)

**<u>Serendipity Properly Paid Tipped Minimum Wage</u>**

At all relevant times, Serendipity 3 properly paid its servers and bussers. Plaintiff's allegation that they performed side work in excess of the allowable 20% of their workweek is directly contradicted by the deposition testimony showing, *inter alia*, that plaintiffs spent around 30 minutes of their typical seven (7) hour shift doing side work and Plaintiffs who worked the evening shift performed little to no side work. Plaintiffs' conflicting and exaggerated testimony regarding the amount of time it took to complete side work defies credibility.

*See Chhab v. Darden Restaurants, Inc.*, 2013 WL 5308004, at *3 (S.D.N.Y. Sept. 20, 2013) ("Waitstaff commonly perform "side work," such as setting and clearing tables, that is related to their tipped occupation but does not itself generate tips. In such circumstances, the DOL has stated that an employer can "take the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (*i.e.* maintenance and preparatory or closing activities)," and such duties are "incidental to the regular duties of the server." (citing DOL Field Operations Handbook § 30d00(e) (rev. June 30, 2000), available at http://www.dol.gov/whd/FOH/FOH_ Ch30.pdf (last visited Sept. 13, 2013)).

Moreover, unlike the NYLL, under the FLSA, even if Serendipity 3 servers and bussers performed side work for more than 20% of their workweek, which they did not, they would be

entitled to full minimum wage for only the hours in which they performed side work, *i.e.*, the 20 to 40 minutes of work in the morning, or at most, the alleged 1.5 hours of side work that Plaintiffs claim.  Plaintiffs' unsupported contention that they should receive full minimum wage in addition to tips for all hours worked would result in an undeserved and unjustified windfall.

*See Flood v. Carlson Restaurants Inc.*, 94 F. Supp. 3d 572, 583 (S.D.N.Y. 2015) ("Under the FLSA, tipped employees who spend a substantial amount of time, or more than twenty percent of their workweeks, engaged in related but non-tip-producing work must be paid the full minimum wage for the time spent performing the non-tipped work." (citing *Mendez v. Int'l Food House Inc.*, 2014 WL 4276418, at *3 (S.D.N.Y. Aug. 28, 2014)); *Chhab v. Darden Restaurants, Inc.*, 2013 WL 5308004, at *3 (S.D.N.Y. Sept. 20, 2013) ("The DOL further clarified this issue in a March 2011 opinion in which it concluded that tipped employees who spend a substantial amount of time, or more than twenty percent of their workweeks, engaged in related but non-tip-producing work must be paid the full minimum wage for the time spent performing the non-tipped work.") (citing U.S. Department of Labor, Wage and Hour Division Fact Sheet # 15: Tipped Employees Under the Fair Labor Standards Act (FLSA) (rev. Mar. 2011) ("DOL Fact Sheet # 15"), available at http://www.dol.gov/whd/regs/compliance/whdfsl5.pdf (last visited September 3, 2013)).

Plaintiffs also argue that the tipped minimum wage is not warranted because Plaintiffs had to share tips with ice cream scoopers.  Such tip sharing was never required, and in fact was explicitly prohibited by Serendipity 3.  Any tips that Plaintiffs provided to the ice cream scoopers was of their own free will, as documented by the numerous server letters stating same.  Moreover, under the NYLL, Serendipity 3 could still use the tipped minimum wage even if tips were also allocated to non-tipped workers, which Serendipity 3 maintains they were not.

*See Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 133 (S.D.N.Y. 2014) ("Unlike the FLSA, New York's Minimum Wage Act—Article 19 of the Labor Law—does not prohibit employers from availing themselves of a tip credit if they require employees to share their tips with employees who do not regularly and customarily receive tips. Indeed, § 196–d expressly states: 'Nothing in this subdivision shall be construed as affecting the allowances from the minimum wage for gratuities in the amount determined in accordance with the provisions of article nineteen of this chapter.'").

**Plaintiffs Are Not Entitled To Liquidated Damages**

Plaintiffs are not entitled to liquidated damages because Serendipity 3 acted in good faith to comply with federal and state wage and hour laws.  At all relevant times, Serendipity 3 properly paid servers overtime, prohibited unlawful tip sharing, provided uniforms and now provides additional uniform pay, posted all required posters regarding minimum wage and workers' rights, and provided paid vacation and other benefits. When Serendipity inadvertently and unintentionally paid the incorrect minimum wage, it immediately corrected itself and provided retroactive pay to its employees.

*See* 29 U.S.C. § 260 ("if the employer shows to the satisfaction of the court that the act or omission giving rise to [unpaid wages claim] was in good faith … the court may, in its sound

discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title."); *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008) (explaining that liquidated damages are not warranted where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective good faith with objectively reasonable grounds for believing that its acts or omissions did not violate the FLSA); NYLL § 198(1-a) (employees not entitled to liquidated damages where employer "proves a good faith basis to believe that its underpayment of wages was in compliance with the law."); *He v. Home on 8th Corp.*, 2014 WL 3974670 (S.D.N.Y. Aug. 13, 2014) (explaining that Courts in the Second Circuit have not substantively distinguished the federal standard from the current New York State standard of an employer's good faith defense).

Dated:   November 22, 2017
         New York, New York

                                           **WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**


By:         / s /   *William F. Cusack*
      William F. Cusack
      Justin A. Guilfoyle
      *Attorneys for Defendants*
      150 East 42nd Street
      New York, New York 10017-5639
      Tel: (212) 490-3000
      Fax: (212) 490-3038
      File No.: 18498.00001
      *William.Cusack@wilsonelser.com*
      *Justin.Guilfoyle@wilsonelser.com*