UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Irwing Velandia et al.,

                Plaintiffs,

—v—

Serendipity 3, Inc. et al.,

                Defendants.

16-cv-1799 (AJN)

MEMORANDUM & ORDER

ALISON J. NATHAN, District Judge:

On March 10, 2016, Plaintiff Irwing Velandia, on behalf of himself and all others similarly situated, filed a complaint in the Southern District of New York alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, New York Labor Law ("NYLL"), Art. 19 § 650 *et seq.*, and the New York Wage Theft Prevention Act ("WTPA"). Dkt. No. 1. Velandia claimed that his employer, the restaurant Serendipity 3, failed to pay legally required minimum wage and overtime pay, failed to give him required statements and notifications, imposed an unlawful tip pool upon him, and required him to purchase uniforms without maintenance pay or reimbursement.

On September 7, 2016, the Parties stipulated to preliminary certification of the FLSA collective action and mailed a Court-approved notice to members of the putative collective action. Dkt. No. 31. Thirty-two individuals became plaintiffs to the litigation. The parties exchanged over six thousand pages of paper discovery; participated in settlement negotiations before Magistrate Judge Andrew J. Peck; and submitted pretrial materials including a joint

1

pretrial report, proposed findings of fact and conclusions of law, motions in limine, and hundreds of trial exhibits.

On January 5, 2018, during what was scheduled to be the final pretrial conference, the parties informed the Court that they had reached a settlement. On February 6, 2018, the parties submitted a fully executed settlement agreement for the Court's approval, *see* Dkt. No. 131-1 (hereafter "Settlement"), along with a joint letter explaining their views on the fairness of the settlement, *see* Dkt. No. 131 (hereafter "Joint Letter"), a calculation of damages for each of the 32 Plaintiffs, *see* Dkt. No. 131-2, and a declaration requesting attorney's fees and explaining why Plaintiffs' counsel views the requested amount as reasonable, *see* Dkt. No. 131-3 (hereinafter "Pechman Dec.").

The settlement agreement provides that the Plaintiffs will receive a total settlement of $975,000, which will be allocated proportionally based on the total damages to which each Plaintiff would have been entitled if Plaintiffs had prevailed at trial. Settlement at 3, 4-5. It further provides that named Plaintiff Irwing Velandia will receive an additional $10,000 service award to be deducted from Plaintiffs' counsel's attorney's fees and costs. Settlement at 3. In addition, the settlement agreement provides that Plaintiffs' counsel will receive $316,622.09 in attorney's fees and costs. Settlement at 5. The settlement agreement also contains a release provision, under which the Plaintiffs

> unconditionally release and forever discharge Defendants ... from any and all claims and causes of action for damages, salaries, wages, compensation, spread-of-hours pay, statutory damages, unlawful wage deductions, misappropriation of gratuities, overtime wages, uniform pay, monetary relief, and any other benefits of any kind, earnings, back pay, liquidated, statutory, and other damages, statutory penalties, interest, attorneys' fees, and costs, for the Claims and any other claim brought, or that could have been brought, in this action under the FLSA, the NYLL, the WTPA, and/or any local, state, or federal wage statute, code, or ordinance ....

Settlement at 6. Finally, the settlement agreement contains a non-disparagement provision, under which the parties "agree that they will not disparage either verbally or in writing . . . the character, quality, or propriety of the person, personnel, or business operations of Defendants or about Plaintiffs." Settlement at 7. However, the non-disparagement provision further states that the parties are not precluded "from making truthful references either verbally or in writing to the character, quality, or propriety of the person, personnel, or business operations of Defendants or about Plaintiffs," nor are they precluded "from making truthful statements about their experience in litigating this action." Settlement at 7. For the following reasons, the Court approves the settlement and award of attorney's fees and costs in full.

I. **Legal Standard**

In order to serve the FLSA's purpose of ensuring "a fair day's pay for a fair day's work," settlements in FLSA cases must be approved by a court or by the Department of Labor. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)). As a result of this requirement, the Plaintiffs' claims in this case cannot be dismissed with prejudice until the Court determines that the settlement is "fair and reasonable." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). A "fair and reasonable" settlement is one that "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Mamani v. Licetti*, No. 13-CV-7002 (KMW) (JCF), 2014 WL 2971050, at *1 (S.D.N.Y. July 2, 2014) (quoting *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-0086 (JS) (MLO), 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008)).

In order to evaluate the fairness of a proposed settlement, the parties must provide the court with enough information to evaluate "the bona fides of the dispute." *Id.* (quoting *Dees v.*

*Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010)). At minimum, this includes information on "the nature of plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure both to plaintiffs and to any putative class, the bases of estimates of plaintiffs' maximum possible recovery, the probability of plaintiffs' success on the merits, and evidence supporting any requested fee award." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015). The parties must articulate their remaining points of disagreement to the Court. *Mamani*, 2014 WL 2971050, at *1. If they disagree over the calculation of wages owed, they "must provide each party's estimate of the number of hours worked and the applicable wage." *Id.* (citation omitted). The Court will also review a proposed award of attorneys' fees to ensure that they are reasonable. *Wolinsky*, 900 F. Supp. 2d at 336.

## II. Discussion

For the reasons that follow, the Court concludes that the settlement agreement can be affirmed in its entirety.

### A. The Settlement Amount Is Fair and Reasonable

In determining whether a settlement award is fair and reasonable, the Court must consider the totality of the circumstances, including

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Thornhill v. CVS Pharmacy, Inc.*, No. 13-cv-5507 (JMF), 2014 WL 1100135, at *2 (S.D.N.Y. Mar. 20, 2014) (quoting *Wolinsky*, 900 F. Supp. 2d at 335). The Court begins its analysis of the total settlement amount by comparing its size to that of Plaintiffs' potential recovery at trial. *See id.* at *1-2 & n.1. The Plaintiffs represent that their "best day" damage calculations estimate that

4

they would collectively be owed $1,105,734.95. Joint Letter at 3. In support of this number, the Plaintiffs provide the underlying data used to calculate Plaintiffs' estimate of damages and the total damages that could be awarded to each of the Plaintiffs. Dkt. No. 131-2. The lump sum recovery of $975,000 thus represents 88% of Plaintiffs' best-case recovery. This discount on Plaintiffs' claims is justified because the litigation presents significant risks. Defendants have maintained throughout the litigation, for example, that they had no knowledge that the Plaintiffs were tipping non-servers and that these payments were instead gifts given of Plaintiffs' own free will. Joint Letter at 6. Defendants had also vigorously asserted that the Plaintiffs could not recover for uniform maintenance because the uniforms fit within the "wash and wear" exception to FLSA. Joint Letter at 7. In addition, settlement ensures that the Plaintiffs will not have to expend additional resources at trial and will avoid having to take the stand and face cross-examination from defense counsel.

Procedurally, the parties negotiated at arm's length over the course of one and one-half years. Attorneys for both parties are competent and experienced in wage and hour litigation and engaged in repeated, vigorous settlement negotiations that continued up to the eve of trial. The length of negotiations, the amount of work performed by the attorneys to further settlement negotiations, and the fair award negotiated all confirm that there was no collusion or fraud in reaching this settlement agreement.

For the reasons stated, the Court concludes that the settlement amount properly reflects the range of possible recovery and the risks and expenses of litigation. The Court is also satisfied that an arms-length negotiation took place between experienced counsel. Accordingly, the overall settlement amount of $975,000 is fair and reasonable.

**B.     The Court Approves the Narrow Release Provision**

The Court concludes that the settlement agreement's release provision, which releases Defendants only from liability to any wage and hour claims or other related claims that could have been brought by the Plaintiffs as part of this action,[1] is sufficiently narrow to be approved. "Courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Martinez v. Gulluoglu LLC*, No. 15-cv-2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Lopez*, 96 F. Supp. 3d at 181). However, "[t]he parties have every right to enter into a settlement that waives claims relating to the existing suit in exchange for a settlement payment." *Lopez*, 96 F. Supp. 3d at 181; *see also* Order, *Hernandez v. McGee's Bar & Grill, Inc.*, No. 15-cv-6067 (FM) (S.D.N.Y. Aug. 23, 2016), Dkt. No. 57 (approving similar release provision). Additionally, no Plaintiff remains in the employment of Serendipity 3, so the release provision could not have any effect on potential claims accumulating in the future. Because the release provision is appropriately limited only to claims that could have been brought with this litigation and pertain to wages, hours, and the related subjects covered by FLSA and related state law, the Court approves the settlement with the release provision in it as written.

C. **The Court Approves the Narrow Non-Disparagement Provision**

The settlement agreement in this case contains a narrow non-disparagement provision that prevents the parties from "disparag[ing] either verbally or in writing the character, quality, or propriety of the person, personnel, or business operations of Defendants or about Plaintiffs"

---

[1] As stated previously, the release provision applies only to "claims and causes of action for damages, salaries, wages, compensation, spread-of-hours pay, statutory damages, unlawful wage deductions, misappropriation of gratuities, overtime wages, uniform pay, monetary relief, and any other benefits of any kind, earnings, back pay, liquidated, statutory, and other damages, statutory penalties, interest, attorneys' fees, and costs, for the Claims and any other claim brought, or that could have been brought, in this action under the FLSA, the NYLL, the WTPA, and/or any local, state, or federal wage statute, code, or ordinance." Settlement at 6.

but allows the parties to "mak[e] truthful references either verbally or in writing to the character, quality, or propriety of the person, personnel, or business operations of Defendants or about Plaintiffs," as well as "mak[e] truthful statements about their experience in litigating this action." Settlement at 7. The Court concludes that this provision is sufficiently narrow to be approved as part of the settlement agreement. "As consideration for a settlement payment, plaintiffs may contract away their right to say things that are insulting or calumnious about the defendants." *Lopez*, 96 F. Supp. 3d at 180 n.65. However, non-disparagement provisions can be contrary to public policy if they "prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-cv-8187 (AJN), 2015 WL 7871036, at *3 (S.D.N.Y. Dec. 3, 2015). As a result, a non-disparagement provision is only acceptable if it is "narrowly tailor[ed] . . . to allow Plaintiffs to discuss their litigation of th[e] case." *Id.*; *accord Amaro v. Barbuto, LLC*, No. 16-cv-1581 (AJN), 2017 WL 476730, at *3 (S.D.N.Y. Feb. 2, 2017).

Here, the parties have narrowly tailored the non-disparagement provision to prevent either party from making insulting statements about the other while expressly providing that both parties can discuss the litigation. Settlement at 7. As a result, the Court approves the settlement agreement with the non-disparagement provision in it.

## D. The Request for Attorney's Fees Is Granted as Reasonable

The Court also concludes that the requested attorney's fees and costs is reasonable and will therefore grant the request. Plaintiff's counsel requests $316,622.09 in attorney's fees and costs, Settlement at 5, which represents 32% of the total settlement. Courts routinely award one-third of a settlement as a reasonable fee in FLSA cases. *See Zhang v. Lin Kumo Japanese Rest.*,

*Inc.*, No. 13-cv-6667(PAE), 2015 WL 5122530, at *4 (S.D.N.Y. Aug. 31, 2015) (collecting cases).

Using the lodestar as a "cross check" further demonstrates the reasonableness of this amount, although the Court must first reduce the lodestar because some of Plaintiffs' counsel have requested hourly fees that are excessive. Plaintiffs' counsel states that the lodestar in this case (not including costs and disbursements) is $286,060. Pechman Dec. at 8; Ex. 1 to Pechman Dec. at 33. This amount reflects a billing rate of $600 per hour for Louis Pechman, founding partner of Pechman Law Group; $400 for associate Lillian M. Marquez; $300 for associate Vivianna Morales; $225 for associate Gregory Slotnick; $200 for associate Washcarina Martinez Alonzo; and $100 for law clerk Christina Brito. Pechman Dec. at 8. The Court respectfully concludes that the requested rates for Mr. Pechman and Ms. Marquez are excessive and will reduce them in calculating the lodestar. The Court concludes that the rates for the other attorneys for Plaintiffs are reasonable for this District. *See Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 514-15 (S.D.N.Y. 2011) (collecting cases on reasonable hourly rates).

First, an hourly rate of $600 per hour is excessive in a FLSA action, even for a senior litigator with over 25 years of experience. As another court in this District recognized, "FLSA litigators are rarely awarded over $450 per hour." *Manley v. Midan Rest. Inc.*, No. 14-cv-1693 (HBP), 2017 WL 1155916, at *11 (S.D.N.Y. Mar. 27, 2017) (collecting cases). In that case, Magistrate Judge Pitman reduced the hourly rate for Mr. Pechman to $500. *Id.* at *11-12. Other courts have reduced his rate to $400 per hour. *See Cazarez v. Atl. Farm & Food Inc.*, No. 15-cv-2666 (CBA) (RML), 2017 WL 3701687, at *7 (E.D.N.Y. May 31, 2017); *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 475-76 (S.D.N.Y. 2009). This Court agrees that

$500 per hour is an appropriate hourly rate for Mr. Pechman in this FLSA action and will reduce the lodestar accordingly.

Second, the Court concludes that a rate of $400 per hour is an excessively high rate for an associate in a FLSA action. Courts in this District routinely approve of an hourly rate for associates between $200 and $300. *Allende*, 783 F. Supp. 2d at 514-15 (collecting cases). Nothing in Ms. Marquez's experience suggests that a higher rate would be warranted. Ms. Marquez graduated from law school in 2011 and served as a law clerk and staff attorney for approximately five years. Pechman Dec. at 6. She has worked for PLG for a little under two years. Pechman Dec. at 6-7. In this District, the range of fees for "employment law litigators with approximately ten years' experience is between $250 per hour and $350 per hour." *Wong v. Hunda Glass Corp.*, No. 09-cv-4402 (RLE), 2010 WL 3452417, at *3 (S.D.N.Y. Sept. 1, 2010). For this reason, in *Cazarez*, a court in the Eastern District reduced Ms. Marquez's hourly rate to $250 per hour. 2017 WL 3701687, at *7. Consistent with rates approved of in this District, the Court will reduce Ms. Marquez's hourly rate to $300 per hour.

After the rates for Mr. Pechman and Ms. Marquez are reduced as described above, the lodestar amount for this case is $268,580. *See* Pechman Dec. at 8 (listing the hours worked by each attorney and the rate charged). The attorney's fees requested in this case thus represent a lodestar multiplier of 1.2. This is a reasonable lodestar modifier. *See Lizondro-Garcia v. Kefi LLC*, No. 12-cv-1906 (HBP), 2015 WL 4006896, at *10 (S.D.N.Y. July 1, 2015) ("[A] multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases." (quoting *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014)); *see also Cortes v. New Creators, Inc.*, No. 15-cv-5680 (PAE), 2016 WL 3455383, at *9 (S.D.N.Y. June 20, 2016) (collecting cases and applying a multiplier of 1.24).

Because the requested attorney's fees represent both a reasonable percentage of the overall settlement award and a reasonable lodestar multiplier, the request for attorney's fees is granted.

## III. Conclusion

In sum, the Court approves the settlement agreement and the settlement award. The Court further awards Plaintiffs' counsel attorney's fees and costs in the amount of $316,622.09. The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: July 12, 2018
New York, New York

_____
ALISON J. NATHAN
United States District Judge